UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LYNN BRIDGES, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>JOHN ARNOLD GERINGER, et al.,<br><br>    Defendants. | Case No. 5:13-cv-01290-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 81 |

This civil case arises from a "Ponzi" scheme[1] that when it operated was based in Santa Cruz County, California. The illusory investment vehicle was called the GLR Growth Fund, L.P. (the "Fund") and was managed and administered by three individuals, John A. Geringer ("Geringer"), Christopher A. Luck ("Luck"), and Keith E. Rode ("Rode"), all of whom are named as defendants in this action. The Fund's business accounts were maintained with another defendant, Santa Cruz County Bank (the "Bank").

After the scheme was discovered and shut down, Geringer, Luck and Rode were indicted and eventually plead guilty to crimes related to their involvement with the Fund.[2] Plaintiffs are a group of individual investors, 21 in total, who lost money as a result of the scheme. They assert claims against the Bank for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and negligent misrepresentation. Plaintiffs also assert claims for conspiracy to commit fraud and

---

[1] In general, a Ponzi scheme is "a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." Warfield v. Alaniz, 569 F.3d 1015, 1018 n.2 (9th Cir. 2009).

[2] The court takes judicial notice of the Indictment and plea agreements filed in the related criminal action, United States v. Geringer, Case No. 5:12-cr-00888-EJD.

1
Case No.: 5:13-cv-01290-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

for violation of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §77l(a)(2), against all defendants.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331.  Presently before the court is the Bank's Motion to Dismiss the Complaint.  See Docket Item No. 81.  Plaintiffs oppose the motion. See Docket Item No. 83.  This matter was found suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b).  Having carefully reviewed the parties' papers, the court has determined the only federal claim asserted in the Complaint is deficiently pled and must be dismissed.  The other state-law claims are subject to dismissal for lack of jurisdiction.  Thus, the Bank's motion will be granted for the reasons explained below.

## I.  BACKGROUND

Geringer, Luck and Rode formed the Fund in 2003.  See Compl., Docket Item No. 1, at ¶ 28.  Each performed a different role with respect to it: Geringer managed the trading accounts and made decisions about the Fund's investments, Luck identified private company investments for the Fund, and Rode kept the Fund's accounting records, prepared its tax returns and IRS forms, and prepared and distributed account statements to fund investors.  Id.  According to the Fund's governing documents, investments were made for one-year periods, at the end of which investors could request to withdraw some or all of their investment.  Id. at ¶ 29.  Investors could also rollover their investment for a new one-year period.  Id.  All investments were deposited in the Fund's accounts at the Bank.  Id.

In order to recruit investors, Geringer created and distributed marketing materials which suggested the Fund had achieved steady annual returns of between 17% and 25% from 2001 to 2011.  Id. at ¶ 31.  The materials also stated the Fund was investing 75% of its assets in publicly traded securities, options and commodities, and that these securities were tied to major stock indices.  Id. at ¶ 32. Plaintiffs believe the purpose of these statements in the marketing materials was "to convey an investment policy under which the Fund invested in liquid securities that had high trading volumes," and to emphasize "diversification within the trading strategy."  Id. at ¶ 35. Geringer eventually raised over $60 million for the Fund, including approximately $5.1 million

from Plaintiffs, and was the Bank's largest accountholder. Id. at ¶¶ 27, 29.

Geringer, Luck and Rode also distributed periodic account statements to investors. Id. at ¶ 44. These statements listed the investor's initial investment, a deduction for the management fee, "contract income" that was purportedly earned by the investor, and a "Total Cash Value" calculated using these three amounts. Id. According to Plaintiffs, the purpose of these account statements was to show investors "how their investments in the Fund had grown, furthering the illusion of profitability." Id.

Chuck Maffia, the Bank's Vice President, personally handled all transactions relating to the Fund's accounts at the Bank. Id. at ¶ 50. Maffia permitted Geringer to use the Bank as a reference for the Fund in order to solicit new investors, and Geringer listed the Bank as a "Banking Reference" in the marketing materials. Id. at ¶ 56. Plaintiffs allege that Maffia marketed the Fund during meetings with potential investors and corroborated Geringer's statement that the Fund was "a safe, conservative, diversified investment vehicle, and indicated that he, Maffia, and his wife had their own retirement money in the Fund." Id. at ¶ 57. Plaintiffs also allege that Maffia solicited new investors for the Fund through his position at the Bank. Id. at ¶¶ 62-64.

It was later discovered that Geringer's representations about the Fund and its performance were false, and the investment was, in fact, a Ponzi scheme. Id. at ¶ 4. Contrary to statements in the marketing materials, the Fund did not invest in publicly traded securities but instead invested in two privately-held technology startup companies. Id. at ¶ 32. In addition, the Fund did not generate returns of 17% to 25% but produced negative returns from 2005 through 2009, and virtually no returns once the majority of the Fund's assets were invested in the illiquid, non-income producing startups. Id. at ¶¶ 35, 45. To maintain the façade that the Fund was profitable, Geringer used Fund assets to pay withdrawing investors more than they were entitled to, and money raised from new investors was used to pay back withdrawing investors. Id. at ¶¶ 46, 47. Plaintiffs allege that the Bank, and particularly Maffia, knew about the scheme. Id. at ¶¶ 49-52.

On December 20, 2012, a federal grand jury indicted Geringer, Luck and Rode for multiple

counts of securities fraud, mail fraud, wire fraud and money laundering arising out their participation with the Fund. Id. at ¶ 69. This action was filed on March 21, 2013, and was stayed to allow the criminal action to proceed. See Docket Item Nos. 1, 55. The stay was dissolved on February 11, 2015. See Docket Item No. 77. The instant motion followed.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

Aside from the general pleading standard under Rule 8(a), allegations of fraud or fraudulent conduct must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). This generally requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). In other words, more detailed facts than is necessary to support other causes of action must be plead to support a fraud claim.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial

4
Case No.: 5:13-cv-01290-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1   notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).

2   In addition, the court must generally accept as true all "well-pleaded factual allegations."
3   Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the
4   light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988).
5   However, "courts are not bound to accept as true a legal conclusion couched as a factual
6   allegation." Id.

7   **III.   DISCUSSION**

8   **A.   Rule 9(b)**

9   Plaintiffs and the Bank dispute the level of scrutiny that should be applied to the
10  Complaint. The Bank argues the entire Complaint is subject to the more rigorous standard
11  described in Federal Rule of Civil Procedure 9(b) because all of the claims are grounded in fraud.
12  Plaintiffs appear to believe otherwise. On this issue, the court generally agrees with the Bank.

13  It is well-established that claims "grounded" in fraud or which "sound" in fraud are subject
14  to a heightened pleading standard. Fed. R. Civ. Proc. 9(b) ("In alleging fraud or mistake, a party
15  must state with particularity the circumstances constituting fraud or mistake."); Swartz, 476 F.3d
16  at 765 ("Rule 9(b) imposes heightened pleading requirements where 'the object of the conspiracy
17  is fraudulent.'"). Claims are grounded in or sound in fraud if the plaintiff alleges "a unified course
18  of fraudulent conduct" and then relies "entirely on that course of conduct as the basis of a claim."
19  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-1104 (9th Cir. 2003).

20  Here, it is undeniable that Plaintiffs claims against defendants are all based on one "unified
21  course of fraudulent conduct," namely the Ponzi scheme that entirely forms the basis of this
22  action. In particular, Plaintiffs allege in the Complaint that Geringer, Luck, Rode, and the Bank -
23  through Maffia - each participated in the scheme and assisted in its illicit operation in various
24  ways. That being the state of their pleading, Plaintiffs have subjected all of their claims, including
25  the statutory claim, to the heightened Rule 9(b) pleading standard. See id. ("It is established law,
26  in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes
27  of action."); see also Mallen v. Alphatec Holdings, Inc., 861 F. Supp. 2d 1111, 1122 (S.D. Cal.

28

2012) ("Although claims under . . . § 12 of the Securities Act do not require allegations of fraud, Rule 9(b) applies to those claims nonetheless if the entire complaint 'sounds in fraud.'").

While Plaintiffs suggest the Bank must do more than simply invoke Rule 9(b) to make it applicable, the court disagrees that anything additional is required when the rule's application is obvious in light of the factual allegations. The court will therefore apply Rule 9(b) to the Complaint.

**B.    Section 12 of the Securities Act**

Plaintiffs assert a claim against the Bank for violation of Section 12(a)(2) of the Securities Act of 1933. That section states, in pertinent part:

> Any person who . . . offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission) . . . shall be liable . . . to the person purchasing such security from him . . . .

15 U.S.C. § 77l(a)(2).

"[T]o prevail under Section 12(a)(2), a plaintiff must demonstrate (1) an offer or sale of a security, (2) by the use of a means or instrumentality of interstate commerce, (3) by means of a prospectus or oral communication, (4) that includes an untrue statement of material fact or omits to state a material fact that is necessary to make the statements not misleading." Miller v. Thane Int'l, Inc., 519 F.3d 879, 886 (9th Cir. 2008). The Bank contends that Plaintiffs have failed to sufficiently plead all four of these elements.

**i.    Interstate Commerce**

The Bank first argues the interstate commerce allegations are insufficient because, with respect to the Bank's involvement in the scheme, Plaintiffs did not identify the means of commerce invoked by Maffia when he solicited investors for the Fund.

In response, Plaintiffs point two short, general statements in their Complaint which indicate that "Defendants, directly or indirectly, used the means or instruments of interstate

6
Case No.: 5:13-cv-01290-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

commerce in connection with the acts described herein," and that "[t]o solicit Plaintiffs' investments, Defendants used the means and instrumentalities of interstate commerce and the United States mail." But considering the application of Rule 9(b), this type of conclusory allegation will not suffice. As a defendant in a lawsuit claiming securities fraud, the Bank is entitled to know what details of its conduct expose it to potential liability under Section 12(a)(2). See Swartz, 476 F.3d at 765 (holding that in the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme). One of those details is the alleged instrumentality of interstate commerce used to commit the violation claimed by Plaintiffs. And in this case, a more detailed commerce allegation is especially important because most of the solicitations between Plaintiffs and Maffia apparently occurred during in-person meetings, none of which satisfy the interstate commerce requirement.

Plaintiffs' argument on this topic, based primarily on whether or not they have satisfied the Rule 8(a) pleading standard, is unpersuasive. Even under that Rule's more liberal requirements, formulaic or wholly inferential allegations like the ones in the Complaint are insufficient.[3] See Twombly, 550 U.S. at 555 (holding that neither "labels and conclusions," "a formulaic recitation of the elements of a cause of action," nor speculative facts are adequate to state a claim under Rule 8(a)). A refinement of the facts on the interstate commerce element is required in order for Plaintiffs to maintain this claim against any of the defendants, consistent with Rule 9(b).

### ii. False or Misleading Statements Related to a Prospectus

As its language makes plain, Section 12(a)(2) does not prohibit all species of securities fraud; instead, it prohibits fraud in or relating to a prospectus. See 15 U.S.C. § 77l(a)(2); Pacific Dunlop Holdings v. Allen & Co., 993 F.2d 578, 579 (7th Cir. 1993) ("Section 12(2) prohibits

---

[3] Vague statements alluding to "calls" or "contacts" between Maffia or the Bank and investors, like the ones in paragraphs 15(b), 16(b) and 64, do nothing more than raise the suspicion that a means of interstate commerce was involved in the purported Section 12(a)(2) violation, and certainly are not enough to provide "fair notice" of any misconduct. See Twombly, 550 U.S. at 555. To the extent Plaintiffs rely on these portions of the Complaint in opposition to this portion of the Bank's motion, such reliance is misplaced.

7
Case No.: 5:13-cv-01290-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

fraud in a prospectus."). The word "prospectus" has been defined for the purposes of Section 12(a)(2) as "a document that describes a public offering of securities by an issuer or controlling shareholder." Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 584 (1995). The Supreme Court has also recognized the phrase "oral communication" as used in the statute "is restricted to oral communications that relate to a prospectus." Id. at 567-68.

Relying on Gustafson, the Bank argues Plaintiffs failed to adequately plead facts alleging the Fund conducted a public offering. As Plaintiffs point out, however, reliance on Gustafson is inappropriate in this context. In Gustafson, the Court had no reason to decide the issue the Bank raises - whether a particular securities transaction constitutes a public offering - since the case indisputably involved a private stock purchase. Id. at 581 ("It will be recalled that as to private transactions, such as the Alloyd purchase, there will never have been a registration statement."). Instead, the issue of "whether an offering is public or private turns on whether the particular class of persons affected needs the protection" of the securities laws, and is subject to a four factor test focused on the number of offerees, the sophistication of the offerees, the size and manner of the offering, and the relationship of the offerees to the issuer. West v. Innotrac Corp., 463 F. Supp. 2d 1169, 1176 (D. Nev. 2006) (citing SEC v. Murphy, 626 F.2d 633, 644-45 (9th Cir. 1980)). Here, though the Bank would limit review to one paragraph, the court construes the Complaint as a whole and finds that it adequately describes with sufficient particularity what could be deemed a public offering under the applicable test, at least at the pleading stage. The fact that Geringer, Luck and Rode may have communicated artificial restrictions on the number of investors and required a minimum investment are relevant considerations as to whether or not the Fund was a public or private offering, but are not dispositive.

The Bank also argues based on Gustafson that Plaintiffs failed to allege the Fund had an associated prospectus. But Plaintiffs do allege the existence of a prospectus, albeit in the form of marketing materials. No additional facts were required under the definition from Gustafson, given

the other allegations that describe the Fund as a public offering.[4]  Contrary to what the Bank implies, a document's content or lack of it is not what it is used to classify it as a prospectus for Section 12(a)(2); more critical to the analysis is the context in which the document is offered. Gustafson, 513 U.S. at 569 (explaining that a document does not cease to be a prospectus whenever it omits a piece of information required by Section 10 of the Securities Act).  The out-of-circuit district court case it cites, Tanner v. Johnston, No. 2:11-CV-28 TS, 2013 U.S. Dist. LEXIS 100094, at *2013 WL 3776268 (D. Utah July 17, 2013), is in accord.  There, before its discussion of whether or not materials were a prospectus, the court found against the plaintiffs on the issue of public offering.

This discussion does not end there, however.  The Bank also argues the Complaint does not adequately explain, in a manner which satisfies Rule 9(b), why or how Maffia's oral statements are related to a prospectus, assuming one exists.  But now that the marketing materials have been identified as a potential prospectus, whether or not Maffia's oral statements are "related" to those documents becomes a simple question.  Some of the statements Maffia made to Plaintiffs, discussed more fully below as those extolling the Fund's performance and investment strategy, have equivalents in the allegations describing the content of the marketing materials. Thus, Plaintiffs have satisfied their duty to describe the obligatory connection between some of Maffia's oral statements and the written marketing materials.

### iii.  Solicitation to Purchase

As part of the "offer or sale of a security" element, "a plaintiff must allege that the defendants did more than simply urge another to purchase a security; rather, the plaintiff must show that the defendants solicited purchase of the securities for their own financial gain." Sparling v. Daou (In re Daou Sys.), 411 F.3d 1006, 1029 (9th Cir. 2005).  "[M]ere participation in unlawful sales transactions," or collateral participation in an offer or sale, without more, is not a

---

[4] Notably, the Bank does not raise a challenge based on the latter portion of the Court's "prospectus" definition calling for the involvement of "an issuer or controlling shareholder." Gustafson, 513 U.S. at 584.

violation of Section 12(a)(2).  Pinter v. Dahl, 486 U.S. 622, 648-50, 651 n. 27 (1988).  Moreover, gratuitous urging, even if done enthusiastically, will not support a Section 12(a)(2) claim unless the solicitor is also "motivated at least in part by a desire to serve his own financial interests or those of the securities owner."  Id. at 647.  Only when such a motivation exists is it then fair to align the solicitor with the securities owner for the purposes of Section 12(a)(2) liability.  Id.

Since the Complaint describes several instances of potential solicitation between Maffia and Plaintiffs, the question is whether it also sufficiently describes a motivating financial benefit.  It does not.  Though Plaintiffs suggest Maffia may have received some personal benefit in the form of withdrawal privileges from the Fund, this does not neatly translate into a corresponding benefit to the Bank since Plaintiffs fail to allege how the Bank's interests are also promoted in that scenario.  This allegation is critical in determining if Plaintiffs can ultimately proceed with a Section 12(a)(2) against the Bank, rather than against non-party Maffia, because the two are not similarly-situated as to the existence of a benefit.  Aside from being an alleged promoter, Maffia was also an investor who could receive some direct recompense for his efforts from the Fund or its managers.  The Bank, on the other hand, seems to have been a passive participant as the financial institution holding the Fund's accounts.  Under these circumstances, Plaintiffs must be more specific in the Complaint, not just in their opposition to this motion.

The Bank also moves to dismiss the Section 12(b)(2) claims asserted on behalf of Brian Anderson, Kelly Otis, Alice Keeney, Harold Miller, Jackson Schafer-Junger, and Yvonne Wright-Scott, the "no contact plaintiffs," because there are no allegations of direct communication between these six individuals and Maffia.  Aside from those deficiencies already discussed, the court agrees that these plaintiffs' Section 12(b)(2) claims against the Bank cannot stand without such allegations.  See Maine State Retirement Sys. v. Countywide Fin. Corp., No. 2:10-CV-0302 MRP (MANx), 2011 U.S. Dist. LEXIS 125203, at *37, 2011 WL 4389689 (C.D. Cal. May 5, 2011).

   **iv. Falsity**

To violate Section 12(a)(2), a statement in or related to a prospectus must include an untrue

10
Case No.: 5:13-cv-01290-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

statement of material fact or omit a statement of material fact necessary under the circumstances to make the statement not misleading.  15 U.S.C. § 77l(a)(2).  The Bank argues that Complaint does not adequately ascribe an untrue statement or omission to Maffia.

Plaintiffs claim Maffia made several oral statements to them.  The first category includes those indicating that Maffia's own retirements funds were invested in the Fund, that Maffia personally oversaw the Fund's accounts, that the Fund's account was the largest at the Bank and received the "utmost oversight," that "funds moved in and out of the account on a regular basis due to changes in the market," and that investment money could be taken out of the Fund and "parked at the Bank until conditions improved."  The Bank contends these statements were not alleged to be false.  The Bank is correct.  In fact, Plaintiffs affirm that some of these statements - those discussing Maffia's oversight and personal investment in the Fund - were actually true.  As such, these statements cannot support liability under Section 12(a)(2).

The second category involves statements describing the Fund's performance ("Geringer was generating consistent, long-term returns for his clients" and had "no losses to date"), and the details of the Fund's investment strategy ("the majority of the funds were invested in large cap U.S. public equities" and was "focused on long-term growth").  Plaintiffs do allege these statements were false.  Plaintiffs also allege the Bank knew them to be false since it purportedly knew the Fund was a Ponzi scheme.  That is enough even under a heightened pleading standard since scienter is not an element under Section 12(a)(2).  Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); Miller, 519 F.3d at 886 (recognizing that Section 12(a)(2) is a "virtually absolute liability provision" which does not require an allegation of scienter.).

Accordingly, Plaintiffs have pled some material misstatements of fact that could constitute violations of Section 12(a)(2) - at least as they were made to Karl Ryan, Diane Ryan, Karl Schafer-Junger, and Jeff Wenger - assuming they were also related to a prospectus.  Although the Bank may like them to be so, these particular statements do not qualify as opinions.  See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 135 S.Ct. 1318, 1325

(2015) ("[A] statement of fact ("the coffee is hot") expresses certainty about a thing, whereas a statement of opinion ("I think the coffee is hot") does not."). As articulated in the Complaint, Maffia's statements about the Fund's performance and investment strategy are phrased as certainties, not as his own beliefs or views on those subjects. Omnicare, and its attendant test for when opinions are actionable, is inapposite for that reason.

### C. Conclusion and Leave to Amend

For the reasons explained, Plaintiffs have not stated a claim under Section 12(a)(2) of the Securities Act. The claim will therefore be dismissed, but with leave to amend. See Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) (holding that leave to amend should be freely allowed "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

With the dismissal of the only federal claim asserted in the Complaint, the court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. They will also stand dismissed. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).

## IV. ORDER

The Bank's Motion to Dismiss (Docket Item No. 81) is GRANTED. All claims in the Complaint are DISMISSED WITH LEAVE TO AMEND. Any amended complaint shall be filed on or before **June 5, 2015**.

**IT IS SO ORDERED.**

Dated: May 21, 2015

EDWARD J. DAVILA
United States District Judge